UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | | |
|---|---|---|
| MICHIGAN COMMERCE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11-cv-235 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| TDY INDUSTRIES, INC., | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

This is a declaratory judgment action brought by the issuer of a letter of credit. Plaintiff's predecessor bank issued a $1.7 million letter of credit in 2002 in connection with the sale of certain real property. Defendant, TDY Industries, Inc., was the seller of the property and the beneficiary of the letter of credit. Plaintiff ("the Bank") seeks a declaration that the letter of credit is unenforceable as a matter of law, on two theories. First, the Bank asserts that the letter of credit expired five years after its issuance by virtue of the provisions of Article 5 of the Michigan Uniform Commercial Code, under which a letter of credit that states that it is perpetual expires after five years. U.C.C. § 5-106(d), MICH. COMP. LAWS § 440.5106(4). Alternatively, the Bank seeks a declaration that it is impossible for defendant to meet the conditions for payment of the letter. Subject-matter jurisdiction of this court is predicated upon complete diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332(a).

This matter is before the court on the parties' cross-motions for summary judgment. Both parties have consented to the dispositive jurisdiction of a magistrate judge. (*See* Consent and

Order of Reference, docket # 9). The court conducted a hearing on the cross-motions for summary judgment on November 9, 2011. For the reasons set forth below, the court finds that defendant is entitled to judgment on the Bank's request for a declaration that the letter of credit is perpetual and therefore expired after five years. With regard to the Bank's alternative claim, the court determines not to exercise its discretionary jurisdiction under the Declaratory Judgment Act.

## Undisputed Facts

The facts necessary for resolution of the Bank's claim under the Uniform Commercial Code are not subject to dispute. They are established by the pleadings, as well as documentary evidence, the authenticity of which neither party contests.

Plaintiff's predecessor in interest, Michigan Commerce Bank, issued irrevocable letter of credit number 124 (docket # 23-1, ID#s 120-22) on October 10, 2002. The letter of credit (LOC) was issued in connection with the sale of certain real property located in the City of Muskegon. The seller of the real property was defendant TDY Industries; the purchaser was Lakefront Development, LLC (LFD). The LOC recites that it was issued "to support the purchase of the property located at 700 Terrace Street ("Property") by LFD from TDY." (ID# 120). The LOC irrevocably authorized TDY to draw on the Bank for sums not to exceed $1.7 million, pursuant to the terms thereof.

Attached to the LOC was an environmental remediation agreement (ID#s 123-31) pertaining to the real estate sold by TDY. In the agreement, TDY agreed to pursue a remedial action plan with the Michigan Department of Environmental Quality (MDEQ) for purposes of bringing the real estate into environmental compliance. Lakefront Development is obligated to pay the purchase price for the property once TDY obtains government approval of the remedial action plan, which the

parties recognize might be subject to amendment or modification at the direction of the MDEQ. (¶¶ 1(f), 2).

The LOC establishes three conditions precedent to the payment of any draft: (a) a final approval of the remedial action plan by the MDEQ, as set forth in the attached Environmental Remediation Agreement; (b) a statement signed by TDY affirming that it is provided notice of both the draw request and the amount of the draw to the purchaser and that the purchaser has not objected within the preceding ten-day period, or, alternatively, a statement signed by both buyer and seller confirming the balance owed under the purchase agreement; and (c) presentation of the draft on or before the expiration date of the LOC, accompanied by a specific reference to the LOC. (ID# 120).

Paragraph 3 of the LOC sets forth the following provisions concerning the letter's term:

> 3. **Term**
>
>    a. **Initial Term.** All drafts on this Letter of Credit shall be honored on presentment and delivery of the above-specified documents on or before the expiration of this Letter of Credit. The initial term of this letter of credit shall extend to and including March 10, 2003, after which this Letter of Credit shall automatically renew on a month to month basis.
>
>    b. **Termination**. Bank shall not be permitted to terminate or in any manner reduce or limit this Letter of Credit during the initial term or any renewal term.

(LOC ¶ 3, ID# 121).

The LOC sets forth at least two methods by which its face amount may be reduced or extinguished over time. First, whenever Lakefront Development sells any portion of the property before the final approval of the remedial action plan, Lakefront Development is required to disburse the proceeds in a certain manner. (LOC, ¶ 2, ID# 121). The LOC provides that any amounts paid

to TDY pursuant to this scheme "shall reduce the amount that will be paid from this Letter of Credit upon approval of the RAP." (*Id.*). The second method arises from the provisions of paragraph 4 of the LOC, which establish fees to be paid to the Bank. Lakefront Development was required to pay the Bank an initial fee of $12,750.00 upon issuance, plus $2,125.00 for each month the initial term is extended. In default of payment by either Lakefront Development or TDY, "the Bank may pay the fee from the ILOC and reduce the amount available to TDY by the amount of the advance." (LOC, ¶ 4, ID# 121).

No version of the remedial action plan has been approved by the MDEQ, although TDY continues to work with that agency in an effort to achieve approval. It is undisputed that the original remedial action plan has been revised in response to comments from the Michigan authorities. It is also undisputed that TDY has never presented a draft or otherwise attempted to collect under the LOC.

Plaintiff filed its complaint for declaratory judgment in the Muskegon County Circuit Court on February 3, 2011. The complaint seeks a declaration that the Bank is not obliged to honor drafts under the LOC, on two theories. First, the Bank alleges that the LOC has expired by operation of law pursuant to section 5-106 of the Michigan U.C.C. (Compl., ¶ 17). Alternatively, the Bank seeks a declaration that it is impossible for TDY to present a conforming draft. By notice of removal filed March 9, 2011, TDY removed this case to federal district court on the basis of complete diversity of citizenship and requisite amount in controversy. 28 U.S.C. §§ 1332(a), 1441(a).

**Applicable Standard**

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005). "'[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005) (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)). "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.[1] FED. R. CIV. P. 56(a); *Care To Live v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

---

[1] "The standard for granting summary judgment remains unchanged" under the amendments to Rule 56 that went into effect on December 1, 2010. *See* FED. R. CIV. P. 56 advisory committee note (2010 amendments).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of her pleadings. *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

## Discussion

### A. Expiration of LOC

The Bank's first contention is that the LOC expired after five years, because it is a "perpetual" letter of credit within the meaning of U.C.C. § 5-106(d), MICH. COMP. LAWS § 5106(4). This argument misconstrues the provisions of the Uniform Commercial Code, is contrary to the only appellate decision on the subject, and is supported by no authority.

Letters of credit are governed by article 5 of the Uniform Commercial Code.[2] As is typical with the U.C.C., article 5 serves a gap-filling function for letters of credit. The commentary to U.C.C. § 5-101 emphasizes that article 5 seeks to preserve "flexibility through variation by agreement in order to respond to and accommodate developments in custom and usage that are not inconsistent with the essential definitions and substantive mandates of the statute." The general principle in article 5 is "freedom of contract." 3 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 26-3 at 148 (5th ed. 2008).

This schema is reflected in section 5-106 of the U.C.C., which governs issuance, amendment, cancellation, and duration of letters of credit. The parties' freedom of contract is preserved by the general duration provision of section 5-106.

> (c) If there is no stated expiration date or other provision that determines its duration, a letter of credit expires one year after its stated date of issuance or, if none is stated, after the date on which it is issued.

U.C.C. § 5-106(c), MICH. COMP. LAWS § 440.5106(3). This section obviously allows the parties to establish an agreed upon expiry (the "stated expiration date"), or, alternatively, a mechanism that does not expressly identify the expiration date but nevertheless determines it (an "other provision that determines its duration"). Only in default of these agreed-upon provisions does the statute take effect, by providing a one-year expiration date.

The courts and commentators have widely recognized that "evergreen clauses" fall within the second type of agreed-upon duration contemplated by section 5-106(c) -- a provision

---

[2] The LOC provides that it will be construed and interpreted in accordance with the laws of the State of Michigan. (¶ 5(b), ID# 122). Therefore, this opinion cites to the Michigan version of the U.C.C. The LOC also provides that it is subject to the Uniform Customs and Practice for Documentary Credits (1993 version). (¶ 5(a), ID# 122). The parties agree that the Uniform Customs and Practice for Documentary Credits has no bearing on the present dispute.

determining the duration of the letter. An evergreen clause is a term in a letter of credit providing for automatic renewal of the credit. *See Molter Corp. v. Amwest Surety Ins. Co.*, 642 N.E.2d 919, 921 (Ill. Ct. App. 1994). "An evergreen clause in a letter of credit reflects the parties' intent to make credit available for an indefinite period of time." *Id.*; *accord P.A. Bergner & Co. v. Bank One Milwaukee, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111, 1114-15 (7th Cir. 1998); *see generally* JOHN F. DOLAN, THE LAW OF LETTERS OF CREDIT ¶ 5.03[3][F] EVERGREEN CLAUSES (4th ed. 2007). The provisions of section 3 of the LOC in the present case clearly establish an evergreen letter, as section 3(a) provides that the initial term of the letter extends to March 10, 2003, "after which this Letter of Credit shall automatically renew on a month to month basis." (ID# 121). The parties thereby exercised their freedom of contract under section 5-106(c) to adopt an "other provision that determines [the LOC's] duration."

Article 5 goes on to deal specifically with letters of credit that state that they are perpetual:

> (d) A letter of credit that states that it is perpetual expires 5 years after its stated date of issuance, or if none is stated, after the date on which it is issued.

U.C.C. § 5-106(d), MICH. COMP. LAWS § 440.5106(4).[3] The LOC at issue here does not "state that it is perpetual." The Bank nevertheless argues that subsection (d) should apply, because the LOC as drafted might have an indefinite duration. This interpretation would require the court to rewrite the statute. As construed by the Bank, the five-year duration dictated by section 5-106(d) applies not only to a letter that "states" that it is perpetual, but also to letters that might in effect turn out to be of indefinite duration. If this had been the intent of the drafters, it would have been an easy thing

---

[3] Article 5 provides that the parties may not vary this provision by agreement, U.C.C. § 5-103(c), MICH. COMP. LAWS § 440.5103(3), but the LOC at issue here does not purport to do so.

to draft the statute to say so clearly. The statute could have said, for example, that "all letters expire after five years," or that "a letter may provide for automatic renewal terms, not to exceed a total of five years." Or, the statute could have said, "If the term of a letter might be construed as indefinite, the letter nevertheless expires in five years." But the language of the statute is phrased more narrowly, and more precisely, than these hypothetical blanket prohibitions against any duration exceeding five years.

If the Bank's construction were adopted, every evergreen letter of credit would be subject to a five-year durational requirement. As evergreen clauses are a commonplace in standby letters of credit, one would expect that the Bank would be in a position to cite a case, or even a respected commentary, for the proposition that evergreen letters of credit are in effect "perpetual" and therefore subject to a five-year duration. To the contrary, the only available authority is directly opposed to the Bank's arguments. The parties have both cited the recent Ninth Circuit decision in *Golden West Refining Co. v. SunTrust Bank*, 538 F.3d 1233 (9th Cir. 2008). Despite the Bank's efforts to distinguish *Golden West*, it is directly on point. The letter of credit in that case had a one-year duration, but contained an evergreen clause under which the letter "shall be deemed automatically renewed without amendment for additional one-year periods," subject to the *beneficiary's* ability to cancel. 538 F.3d at 1235. SunTrust presented the same argument that plaintiff advances in the present case: that the letter of credit was perpetual under article 5 and therefore expired five years after it was issued. The Ninth Circuit held that "the plain language of U.C.C. § 5-106(d) requires that a letter of credit state that it is perpetual to qualify as a perpetual letter of credit." *Id.* at 1237. The court conceded that the exact word "perpetual" was not necessary, as long as the letter used "synonyms that clearly declare that the letter of credit will remain

outstanding in perpetuity." *Id.* at 1238. The court went on to say that it is "essential that the words of the letter of credit definitively provide that it will continue in perpetuity." *Id.* The court found that the letter of credit did not "state" that it was perpetual. To adopt SunTrust's interpretation, which would subject evergreen letters to the five-year duration provision of section 5-106(d) "would introduce grave uncertainties into the use of letters of credit and impair their utility for domestic or foreign commerce." *Id.* at 1239. The court further noted that SunTrust's construction of section 5-106(d) would make section 5-106(c) superfluous. *Id.* Section 5-106(c) allows the parties to avoid expiration of a letter of credit by including in the letter "a provision that determines its duration." This would be overridden by SunTrust's interpretation, which would allow subsection (d) to trump the parties' express exercise of their rights under subsection (c) to determine the duration of the letter. *Id.*

Although *Golden West* is not binding, it is persuasive and conforms to this court's reading of both the letter of credit and the provisions of U.C.C. § 5-106. Against *SunTrust*, the Bank offers absolutely no authority in support of its position, an omission that is telling, given the frequency of the issuance of evergreen letters of credit. Furthermore, the principal academic commentators on the Uniform Commercial Code have anticipated and condemned the very distortion of the U.C.C. that the Bank now proffers.

> It is possible that a clever issuer's lawyer might argue that letters of credit containing evergreen clauses are effectively "perpetual," and are thus limited to a five year duration under 5-106(d) regardless of the issuing bank giving notice of nonrenewal. In our opinion, such an argument should be rejected in favor of the parties' ability to contract for an evergreen clause if they so desire. 5-106(d) should apply only to letters that claim to be "perpetual."

3 JAMES J. WHITE & ROBERT S. SUMMERS § 26-4 at 160.

When read as a whole, the LOC in this case discloses clear limits on its duration. Paragraph 3 provides for an expiration date, as well as renewing terms on a month-to-month basis, but this does not state or imply that the letter is "perpetual." The letter, after all, merely guarantees the obligation of Lakefront Development to pay for the parcel of land that it purchased from TDY, the beneficiary of the letter of credit. Hence, paragraph 2 of the LOC provides that its face amount decreases as TDY received proceeds from the sale of real estate. The method that the parties chose under section 5-106(c) to define the duration of the letter is to tie it to the duration of the underlying real estate sales transaction. In no sense can this letter of credit be construed to "state" that it is perpetual. "Indefinite" is not synonymous with "perpetual."

The Bank would transform article 5 from a gap-filling statute to a legislative diktat designed to protect banks from themselves. To be sure, it is unwise business practice for a bank to burden its balance sheet with a long-term letter of credit. But unwise is not illegal. Although article 5 prevents banks from *inadvertently* issuing indefinite letters, by providing that a letter without an expiration date expires in one year, U.C.C. § 5-106(c), banks are free to contract expressly for long-term letters, and beneficiaries are entitled to rely on the banks' undertaking. With the exception of letters that expressly state a "perpetual" duration, freedom of contract remains the rule.

The Bank has not borne its burden of showing that the LOC has expired by operation of law. Judgment will therefore be entered on behalf of defendant, declaring that the LOC has not expired.

B. **Request For Declaration That TDY Cannot Collect on the Letter**

Alternatively, the Bank seeks a declaration that TDY cannot possibly meet the requirements for a draw against the LOC. The Bank argues as follows:

> Here, TDY cannot draw on the Letter of Credit because the Letter of Credit requires TDY to present the September 24, 2002, RAP, when that RAP no longer exists and was replaced by the October 17, 2002, RAP, and because MCB would have to examine the complicated RAPs, with multiple amendments and changes, to determine whether the requirements of the Letter of Credit are met.

(Bank's Brief in Support of Summary Judgment Motion at 10, docket # 23, ID# 111). In response, TDY points out that it has never made or attempted a draw against the LOC, and that in the absence of such request, no "case or controversy" exists between the parties. TDY therefore asserts that this aspect of plaintiff's complaint is presently not ripe. (TDY's Brief at 2, 7, docket # 26, ID#s 267, 273).

On the present record, the court is tempted to conclude that plaintiff's request for relief is not ripe, as it is based on hypothetical assertions and not a concrete set of facts. TDY has not attempted to make a draw against the LOC, so the court would be required to examine all possible factual scenarios to determine whether, in any conceivable factual circumstance, TDY can make a successful draw against the LOC. If, as the Supreme Court has taught, the court is to avoid premature adjudication on the basis of hypothetical fact situations, *see Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985), it might well be said that this case is not ripe for adjudication.

Ripeness, however, is a principle of Article III justiciability and therefore involves a constitutional determination. The Supreme Court has made it clear that the lower courts should avoid deciding constitutional issues if another ground for decision would serve as well. *See Lyng*

*v. Nw. Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988); *United States v. Green*, 654 F.3d 637, 646 (6th Cir. 2011). In the present case, the court need not reach the constitutional question, because the remedy of declaratory judgment is one of discretion. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). The language of the Declaratory Judgment Act, 28 U.S.C. § 2201(a), affords the district court discretion in determining whether and when to entertain an action, even when the suit otherwise falls within the court's subject-matter jurisdiction. *See Traveler's Indem. Co. v. Bowling Green Prof. Assoc.*, 495 F.3d 266, 271 (6th Cir. 2007). The Supreme Court has stated that the Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. The Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id.* Hence, district courts are afforded substantial discretion to exercise jurisdiction in the first instance, "because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of a case for resolution, are peculiarly within their grasp." 515 U.S. at 289.

The Sixth Circuit Court of Appeals has directed attention to five factors relevant to the district court's exercise of discretion to entertain a declaratory judgment action. These are:

(1)     whether the declaratory action would settle the controversy;

(2)     whether the declaratory action would serve a useful purpose in clarifying the legal relationships in issue;

(3)     whether the declaratory remedy is being used merely for purpose of "procedural fencing" or "to provide an arena for *res judicata*";

(4)     whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

      (5)    whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citing *Grand Trunk W. RR Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)). To the extent that they are relevant to the present case, the majority of these factors militate against the exercise of discretionary jurisdiction.

First, it is possible that litigating the Bank's claim in its present, hypothetical posture would indeed settle the controversy, but the process for doing so would be most unsatisfactory. As TDY has not yet met the conditions precedent to making a draw on the LOC (and may never do so), the parties would be forced to litigate in a factual vacuum. The court would be required to opine on a number of alternative factual scenarios (*e.g.*, the MDEQ approves the September 24, 2002 remedial action plan, or the modified plan dated October 17, 2002, or some future plan, or no plan at all). "Settling the controversy" would therefore require an examination of all conceivable factual circumstances that may arise in an uncertain future. For similar reasons, the United States District Court for the Northern District of Illinois has refused to exercise its discretionary jurisdiction to issue a declaratory judgment at the request of a bank seeking, as the Bank does in this case, a premature adjudication on a letter of credit before the beneficiary even attempted to make a draw. *Ferodo Am., Inc. v. Boulevard Bank Nat'l Ass'n*, No. 91C5380, 1991 WL 247685, at * 1 (N.D. Ill. Nov. 7, 1991).

Second, the declaratory judgment action would not serve a useful purpose at this point in clarifying the legal relations in issue, on the simple basis that the parties' legal rights are based on a state of facts that may or may not ever come to pass. Third, it is clear to this court that the Bank has sued to gain procedural advantage. The Bank's counsel is frank to admit to the court that the Bank was unaware of the existence of this letter of credit when it acquired the predecessor bank and

only discovered the letter when it was going through the desk of the former bank president after he left. (Bank's Brief at 2, docket # 23, ID# 103). Rather than assessing TDY's request for a draw if and when it occurred, the Bank ran to court in a premature effort to escape any obligation it might have under an LOC that it considers ill-advised.[4]

Finally, there is an alternative remedy which is both better and more effective. Rather than seeking a declaration of rights on the basis of speculative facts, the Bank should be expected to wait for TDY to make a draw against the LOC. If the Bank believes at that time that it has grounds for dishonor, it will be free to do so. In that event, TDY may bring a claim for wrongful dishonor under section 5-111 of the U.C.C., MICH. COMP. LAWS § 440.5111. The rules governing such claims are clearly established by the Uniform Commercial Code and case law. An award of reasonable attorney's fees and litigation expenses will be available to the prevailing party. MICH. COMP. LAWS § 440.5111(6). A suit for wrongful dishonor, based upon concrete and not hypothetical facts, would clearly be superior to the present declaratory judgment action.

### Conclusion

For the reasons set forth above, the court will enter judgment for defendant on the Bank's request for a declaration that Letter of Credit 124 has expired as a matter of law. In its discretion, the court will decline to exercise declaratory judgment jurisdiction over the Bank's remaining claim.

Dated: December 1, 2011         /s/ Joseph G. Scoville
                                United States Magistrate Judge

---

[4] The fourth factor -- friction between federal and state courts -- is irrelevant here.